**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| KATHERINE JONES,<br><br>*Plaintiff,*<br><br>v.<br><br>ST. LOUIS COUNTY, et al.,<br><br>*Defendants.* | No. 4:25-cv-00269-MAL |

## Memorandum and Order

Defendant St. Louis County ("the County") filed a Motion to Dismiss, Doc. 79, Counts II and III of Plaintiff Katherine Jones's Second Amended Complaint ("the Operative Complaint"), Doc. 77. The Court **GRANTS** the Motion to Dismiss Count II, **GRANTS** the Motion to Dismiss Count III as to negligence *per se*, and **DENIES** the Motion to Dismiss Count III as to ordinary negligence.

## I. Background

Edward Jones ("Decedent") died from a gastrointestinal bleed while incarcerated at the Buzz Westfall Justice Center operated by St. Louis County (Doc. 77 at ¶¶ 11–12). Decedent was diagnosed with an ulcer in December 2022 when he was admitted to St. Mary's Hospital for chest pain and anemia. *Id.* at ¶ 13. During Decedent's hospital stay at St. Mary's Hospital, a St. Mary's Hospital doctor advised Dr. Davis—the medical director at the Justice Center—of Decedent's condition and that he required specialty follow-up and close monitoring. *Id.* at ¶ 14. At discharge, St. Mary's Hospital staff changed Decedent's medication. *Id.* at ¶ 17.

When Decedent returned to the Justice Center, he saw several medical providers including Nurse[1] David Bell and Nurse Practitioner Pruitt. *Id.* at ¶¶ 21–24, 27, 37, 41–42. Nurse Practitioner Pruitt saw Decedent on December 12 and 13, 2022, on which dates she appeared to have copied and pasted an incomplete history of present illness charting from the previous day. *Id.* at ¶¶ 22–23. Nurse Practitioner Pruitt ordered lisinopril—a medication St. Mary's physicians had ordered stopped. *Id.* at ¶ 24. When Nurse Practitioner Pruitt saw Decedent again on February 10, 2023, his blood pressure was critically low. *Id.* at ¶ 27. Nurse Practitioner Pruitt treated Decedent's right-side pain and ordered a lidocaine patch, diclofenac, an extra mattress, and a follow up in two weeks. *Id.* Nurse Practitioner Pruitt also ordered that a complete blood count be taken on Decedent. *Id.* at ¶ 29. Nurse Practitioner Pruitt saw Decedent again on February 25, 2023, and assessed him for heartburn and gas pain. *Id.* at ¶ 35. Nurse Practitioner Pruitt did not assess the abnormal hemoglobin lab results, the positive fecal occult test, and Decedent's new laboratory history showing that he had an abnormal red blood cell count and anemia. *Id.*

On March 3, 2023, prison officials brought Decedent to the infirmary for shortness of breath. *Id.* at ¶ 36. Nurse Practitioner Pruitt again saw Decedent and appeared to copy and paste the incomplete history of present illness from December 2022. *Id.* at ¶ 37. Nurse Practitioner Pruitt did not order any referrals, medication, or treatment. *Id.* Nurse Practitioner Pruitt ordered another complete blood count, but the test was not performed because "instead of ordering the test 'stat' at a local laboratory or properly packaging the specimen, it was received frozen in Lenexa, KS." *Id.* at ¶ 38. Another doctor—Dr. Bellokottenstette—signed off on Nurse Practitioner Pruitt's note. *Id.* at ¶ 40.

The next day—March 4, 2023—Nurse Bell saw Decedent. *Id.* at ¶ 41. Nurse Bell did not address any laboratory abnormalities and did not check Decedent's vitals. *Id.* On March 5, 2023, a physician's assistant noted Decedent's anemia and treated him with a blood transfusion. *Id.* at ¶ 42. Later that day, someone informed a medical

[1] The Court construes the Operative Complaint to say Bell is an Advanced Practice Registered Nurse.

technician that Decedent was yelling for help because he was too weak to hit his call button. *Id.* at ¶ 43. Decedent was pale, lethargic, sweating, had an altered mental status and slurred speech, and was dehydrated. *Id.* EMS arrived three hours later. *Id.* Decedent was pronounced dead on March 6, 2023. *Id.* at ¶ 44. An autopsy revealed that Decedent's esophagus was coated with blood, that his stomach contained blood and coagulum, that his duodenum was filled with blood, and that he had an ulcer measuring three centimeters in diameter and 0.3 to 0.4 centimeters in depth. *Id.* at ¶ 46. His colon also contained black tarry loose stool. *Id.*

Decedent's wife, Plaintiff Katherine Jones, filed suit against several defendants, including St. Louis County. The Operative Complaint alleges the following claims against the County:

- <u>Count II</u>: *Monell* liability for violations of the Eighth and Fourteenth Amendments involving deliberate indifference to Jones's medical needs; and
- <u>Count III</u>: negligence *per se* and, in the alternative, negligence.

(Doc. 77 at 16, 19). The County filed a motion to dismiss all counts against it. (Doc. 102).

## II. Legal Standard

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). To survive a motion to dismiss under 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This standard requires a plaintiff to show at the pleading stage that success on the merits is more than a "sheer possibility." *Id.* It is not, however, a "probability requirement." *Id.* A plaintiff need not provide specific facts in support of his allegations, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level."

*Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (citing *Twombly*, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562 (quoted case omitted). This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Id.* at 556. At this stage, the Court accepts as true the factual allegations in the complaint. *Id.*

Determining if well-pled factual allegations state a "plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The well-pled facts must establish more than a "mere possibility of misconduct." *Id.*

## III. Analysis

The County seeks to dismiss the *Monell* liability claims in Count II—an unconstitutional custom claim and a claim for failure to train or supervise—as well as the negligence claim in Count III. *See generally* Doc. 102. The Court considers each count in turn.

### A. The Court dismisses the *Monell* liability claims in Count II.

The Court dismisses the *Monell* liability claims in Count II. Under *Monell*, "[s]ection 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an 'official municipal policy,' (2) an unofficial 'custom,' or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). Here, Jones's *Monell* claims involve (1) a custom of allowing prison staff to disregard prisoners' medical needs, and (2) failure to train or supervise prison staff to ensure that prisoners receive adequate medical care. The Court considers each claim in turn.

#### i. Jones has failed to state an unconstitutional custom claim.

Jones has failed to state an unconstitutional custom claim. To make an unconstitutional custom claim under *Monell*, a plaintiff must show:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by [municipal] employees;
>
> (2) Deliberate indifference to or tacit authorization of such conduct by [municipal] policymaking officials after notice to the officials of that misconduct; and
>
> (3) That [the victim] was injured pursuant to [the municipality's] custom.

*Mitchell v. St. Louis County*, 160 F.4th 950, 964 (8th Cir. 2025). Because Jones cannot show a persistent pattern of unconstitutional misconduct by County employees, Jones's unconstitutional custom claim fails.

In support of the unconstitutional custom claim, Jones makes three arguments. First, the Operative Complaint alleges that Justice Center staff engaged in unconstitutional misconduct against Decedent. Doc. 104 at 10–11. Second, the Operative Complaint includes multiple allegations concerning systematic staff failure at the Justice Center. *Id.* at 11–12. Third, the alleged customs and practices resulted in five additional prisoner deaths in 2019. *Id.* at 11; Doc. 77 at 12. The Court rejects these arguments.

The first argument fails because the Court cannot plausibly infer a persistent pattern of misconduct from Jones's death alone. Jones's death easily could have been the result of isolated misconduct by isolated prison staff. Thus, it is not reasonable to infer immediately from Jones's death "a continuing, widespread, persistent pattern of unconstitutional misconduct." *Mitchell*, 160 F.4th at 964.

The second argument fails because the allegations of staff failure are too conclusory to be credited. Here is a sampling of the allegations:

- Justice Center staff failed to make adequate medical diagnoses;
- Justice Center staff failed to maintain adequate documentation practices;
- Justice Center staff failed to provide proper medication;
- Justice Center staff ignored prisoners' serious medical needs; and
- Justice Center staff delayed or denied outside medical treatment.

Doc. 77 at 16–17. Such allegations lend themselves to "formulaic recitation" within a plaintiff's complaint. *Iqbal*, 556 U.S. at 678. The allegations are so formulaic that they do not permit the Court to draw the "reasonable inference" that the County actually had a customary practice of providing substandard care to prisoners. *Id.* After all, "naked assertions devoid of further factual enhancement" need not be credited. *Id.*

The third argument fails because of the time separating the five deaths in 2019 from Decedent's death in 2023. An unconstitutional custom must be "persistent." *Mitchell*, 160 F.4th at 964. Five deaths in 2019 might suggest that an unconstitutional custom existed in 2019. But they do not plausibly suggest that the custom carried over into 2020, 2021, or 2022. If the custom was truly persistent, more deaths or severe injuries would be expected during the intervening years. Jones has not alleged anything about deaths or severe injuries occurring throughout those years. *Cf. Brewington v. Keener*, 902 F.3d 796, 801–02 (8th Cir. 2018) (finding two prior incidents insufficient to show widespread violations); *see also Plamp v. Mitchell Sch. Dist. No. 17-2*, 565 F.3d 450, 460 (rejecting unconstitutional custom claim in part because of extended time-period of officials not being disciplined). Thus, the facts alleged do not support Jones's unconstitutional custom claim.

**ii. Jones has failed to state a claim for failure to train or supervise.**

Jones has failed to state a claim for failure to train or supervise. To make a claim for failure to train or supervise under *Monell*, a plaintiff must show that:

1. [T]he municipality's training practices are inadequate;
2. [T]he municipality was deliberately indifferent to the rights of others in adopting those practices such that the failure to train reflects a deliberate or conscious choice by the municipality; and
3. [A]n alleged deficiency in the municipality's training practices actually caused the plaintiff's constitutional deprivation.

*Mitchell*, 160 F.4th at 963. The third element fatally undermines Jones's claim for failure to train or supervise.

At most, Jones's allegations might suggest that the County had inadequate training practices in 2019, which resulted in five prisoners dying. Doc. 77 at 12. But again, the facts do not plausibly suggest that the inadequacies persisted through 2020, 2021, or 2022. Had the inadequacies persisted, additional deaths or severe injuries probably would have occurred during those years. The Court cannot reasonably attribute Decedent's death in 2023 to the County's inadequate training practices in 2019 if the inadequacies did not persist past 2019. Thus, Jones's claim for failure to train or supervise fails for essentially the same reasons as the unconstitutional custom claim.

Accordingly, the Court dismisses Count II's *Monell* liability claims.

### B. The Court declines to dismiss Count III's negligence claim.

The Court declines to dismiss Count III's negligence claim. In support of the negligence claim, Jones presents two theories: negligence *per se*[2] and ordinary negligence. Doc. 77 at 19–22.

In support of negligence *per se*, Jones invokes § 221.120.1 of the Missouri Revised Statutes. Doc. 77 at 19. That statutory provision requires prison officials to provide "necessary medicine, dental care or medical attention" to attend to prisoners' medical needs. Mo. Rev. Stat. § 221.120.1. This provision cannot support negligence *per se*. Under Missouri law, negligence *per se* occurs when a defendant violates a legislatively pronounced standard of care. *Parr v. Breeden*, 489 S.W.3d 774, 781 (Mo. 2016). . Section 221.120.1 of the Missouri Revised Statutes contains no such standard. The provision tells prison officials to provide necessary medical care

[2] In her Brief in Opposition to the County's Motion to Dismiss, Jones attempts to dismiss her negligence *per se* claim without prejudice. Doc. 104 at 16. Jones cites no authority for the proposition that a litigant may withdraw a claim without prejudice in an opposition brief. Rule 41 cannot govern the withdrawal because "when multiple claims are filed against a particular defendant, Rule 41(a) is applicable only to the voluntary dismissal of all claims against the defendant." 9 Charles Alan Wright & Arthur R. Miller, Fed. Practice and Procedure § 2362 (4th ed. 2026). Thus, the Court declines to accept Jones's voluntary dismissal of the claim without prejudice.

without any standard for what counts as necessary medical care. Mo. Rev. Stat. § 221.120.1. Thus, Jones's negligence *per se* argument fails.

The County presents no argument against the ordinary negligence claim. Doc. 103 at 10–14. Thus, Count III's ordinary negligence claim survives.

**Conclusion**

Accordingly, the Court **GRANTS** the Motion to Dismiss Count II, **GRANTS** the Motion to Dismiss Count III with respect to negligence *per se*, and **DENIES** the Motion to Dismiss Count III as to ordinary negligence.

**SO ORDERED,**

This 12th day of November, 2026.

Maria A. Lanahan

MARIA A. LANAHAN
UNITED STATES DISTRICT JUDGE